IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE SULLIVAN, | ) | CIVIL ACTION NO. 3:22-116 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| EXACT SCIENCES CORPORATION | ) | |
| and KEVIN CONROY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

I.  Introduction

This action arises out of Plaintiff Suzanne Sullivan's ("Ms. Sullivan") attempt to obtain an exemption from a COVID-19 vaccination requirement implemented by her employer, Defendant Exact Sciences Corporation ("Exact Sciences") and her termination after requesting that exemption. (*See* ECF No. 22).

Currently pending before the Court is Defendant Kevin Conroy's ("Mr. Conroy") "Motion for Judgment on the Pleadings as to Counts II and V of [Ms. Sullivan's] Amended Complaint[.]" (ECF No. 34). The Motion is fully briefed (ECF Nos. 35, 37, 40) and ripe for disposition. For the following reasons, the Court **DENIES** Mr. Conroy's Motion.

II. Jurisdiction and Venue

The Court has subject-matter jurisdiction over this case because: (1) Ms. Sullivan advances claims under the Americans with Disabilities Act (the "ADA") and the Family and Medical Leave Act of 1993 (the "FMLA") and (2) Ms. Sullivan's Pennsylvania state law claims

form part of the same case or controversy as her federal law claims. (ECF No. 22); 28 U.S.C. § 1331; 28 U.S.C. § 1367.

Further, venue is proper because a substantial part of the events giving rise to Ms. Sullivan's claims occurred in this district. (ECF No. 22); 28 U.S.C. § 1391(b)(2).

**III.   Background**

The Court begins by outlining the relevant factual allegations in Ms. Sullivan's Amended Complaint. In doing so, the Court takes those allegations as true, as it must in decided a Motion for Partial Judgment on the Pleadings. *Haney-Filippone v. Agora Cyber Charter Sch.*, 538 F. Supp. 3d 490, 493 (E.D. Pa. 2021) ("A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations in the complaint as true and drawing all reasonable inferences in the light most favorable to the nonmoving party.").

**A.   Factual Background**

Ms. Sullivan worked for Exact Sciences as a professional medical representative ("PMR") from 2019 until October 4, 2021. (ECF No. 22 at ¶¶ 9, 47).

On July 30, 2021, Exact Sciences "announced that it would be requiring employees to fully receive a COVID-19 vaccine by September 15, 2021." (*Id.* at ¶ 16). Mr. Conroy, who was the CEO of Exact Sciences, was the "primary decisionmaker involved in creating the Exact Sciences' COVID-19 vaccination policy." (*Id.* at ¶¶ 17–18). When Exact Sciences announced the COVID-19 vaccination requirement, Mr. Conroy stated that there would be a "'process for requesting accommodations based on qualifying religious or medical reasons …'" (*Id.* at ¶ 17).

On August 3, 2021, Ms. Sullivan inquired as to whether she would continue to be employed by Exact Sciences if her doctor recommended that she not receive a COVID-19 vaccine. (*Id.* at ¶ 19). In response, Exact Sciences informed Ms. Sullivan that the company would engage in an "'interactive process to evaluate the availability of a reasonable accommodation for an employee who has a qualifying medical condition or status that is a contraindication for vaccination[.]'" (*Id.* at ¶ 20). Ms. Sullivan made this and other inquiries because, as of August 2021, she had a medical history that included: (1) allergic reactions to the flu vaccine, (2) leukopenia, (3) gastritis, (4) insomnia, (5) demyelinating disease and migraines, and (6) other medical conditions. (*Id.* at ¶¶ 22–24).

On August 5, 2021, Ms. Sullivan sent an email to Exact Sciences and Mr. Conroy pleading with them to "reconsider the mandate" and offering "to test weekly and even daily, if necessary, and to pay for such testing." (*Id.* at ¶ 25). Ms. Sullivan received a response indicating that Exact Sciences would not reconsider its policy, but also stating that the Leaves and Accommodations team would assist her if she sought an accommodation. (*Id.* at ¶ 26). On August 6, 2021, Exact Sciences provided Ms. Sullivan with a medical certification form, thereby treating her previous communications as a request for a reasonable accommodation. (*Id.* at ¶ 27).

On August 11, 2021, Ms. Sullivan received a flu shot and suffered "an immediate allergic, anaphylactoid or anaphylaxis reaction, which included hives, throat tightness, shortness of breath, and disorientation." (*Id.* at ¶ 28). These reactions impaired Ms. Sullivan's ability to breath, concentrate, interact with others, and work. (*Id.* at ¶ 31). After seeking medical attention for her reaction to the flu shot, Ms. Sullivan obtained a letter from her medical doctor,

Robert J. Schmidt, M.D. ("Dr. Schmidt"). (*Id.* at ¶¶ 28–33). In that letter, Dr. Schmidt stated that Ms. Sullivan could have a potentially life-threatening reaction to the available COVID-19 vaccines, and that Ms. Sullivan should therefore be evaluated by an immunologist/allergist prior to potentially receiving a COVID-19 vaccine. (*Id.* at ¶¶ 34–35). However, Ms. Sullivan was not able to obtain an appointment with a specialist until December 6, 2021, and she advised Exact Sciences of that fact. (*Id.* at ¶¶ 37–38).

On August 15, 2021, Mr. Conroy announced that the deadline to fully receive the COVID-19 vaccinations was extended until October 1, 2021. (*Id.* at ¶ 39). After making that announcement, Mr. Conroy called Dillan Roth, ("Mr. Roth"), another PMR working for Exact Sciences, who was also seeking an accommodation relative to the COVID-19 vaccine requirement. (*Id.* at ¶ 40). In the course of that conversation, Mr. Conroy told Mr. Roth that "anyone who made the 'selfish' decision to not get vaccinated would need to find another job." (*Id.* at ¶ 41). Specifically, Mr. Conroy made the following statement to Mr. Roth: "'And I know you're gonna [sic] go tell your little friends about this so tell them this: If they want to make this decision that I think is a selfish one, then they will need to find another employer to work for.'" (*Id.* at ¶ 42). Mr. Conroy made these statements while Ms. Sullivan's accommodation request was pending. (*Id.* at ¶ 45).

On September 27, 2021, Exact Sciences informed Ms. Sullivan that her accommodation request was denied and her employment with the company would be terminated on October 4, 2021. (*Id.* at ¶ 47). Exact Sciences offered Ms. Sullivan the following reasons for denying her accommodation request:

> You recently requested that Exact Sciences provide an accommodation to allow you to remain unvaccinated in your position, notwithstanding the Company's vaccination policy. Your request is being denied because: Allowing you to remain unvaccinated in your role is not a reasonable accommodation because of the safety risk you would pose to others (including but not limited to medically vulnerable patients and professionals providing healthcare services) as well as the associated negative reputational, relational, and access impacts on the Company.

(*Id.* at ¶ 48).

Exact Sciences denied the accommodation requests of other employees for the same reasons that they offered Ms. Sullivan in denying her request. (*Id.* at ¶¶ 48–50). Exact Sciences and Mr. Conroy "made the decision that exemptions would not be provided to PMRs such as [Ms. Sullivan], and that the accommodation requests would be denied at once." (*Id.* at ¶ 52). Further, it was Mr. Conroy who "was the primary decisionmaker involved in deciding that no PMR, including Ms. Sullivan and Mr. Roth, would be provided exemptions" to the vaccine requirement, which "resulted in their employment being terminated." (*Id.* at ¶ 53).

After Ms. Sullivan received the email from Exact Sciences indicating that her accommodation request had been denied, she responded by pointing out that the denial letter was wrong—she had not requested to remain unvaccinated. (*Id.* at ¶¶ 54–55). Rather, she had asked that the deadline to become vaccinated be extended for a "few months so that she could see a specialist based upon her doctor's advice." (*Id.* at ¶ 55). On September 30, 2021, Exact Sciences informed Ms. Sullivan that it was unable to provide her with an extension until December. (*Id.* at ¶ 59).

Finally, at the time of her termination, Ms. Sullivan had been "fully performing her job duties" and her "customers did not require sales representatives to be vaccinated[.]" (*Id.* at ¶ 68).

### B.    Procedural History

Ms. Sullivan filed her Amended Complaint on February 21, 2023. (ECF No. 22). In that document, she brings the following five claims: (1) a claim for Disability Discrimination under the ADA and the Pennsylvania Human Rights Act (the "PHRA") as against Exact Sciences ("Count I"); (2) a claim for Unlawful Retaliation under the ADA and the PHRA as against Exact Sciences and Unlawful Retaliation under the PHRA as against Mr. Conroy ("Count II"); (3) a claim for Violation of her rights under the FMLA as against Exact Sciences ("Count III"); (4) a claim for Unlawful Retaliation and Discrimination under the FMLA as against Exact Sciences ("Count IV"); and (5) a claim for Aiding and Abetting under the PHRA as against Mr. Conroy ("Count V"). (*Id.* at 10–17).

On April 3, 2023, Mr. Conroy filed an Answer and Affirmative Defenses to Ms. Sullivan's Amended Complaint. (ECF No. 33). On April 10, 2023, Mr. Conroy moved for Partial Judgment on the Pleadings and submitted a Brief in Support. (ECF Nos. 34, 35). Ms. Sullivan filed a Response on April 28, 2023. (ECF No. 37). On May 11, 2023, Mr. Conroy submitted a Reply. (ECF No. 40).

Finally, on March 1, 2024, Mr. Conroy and Exact Sciences filed a Motion for Summary Judgment. (ECF No. 72). Ms. Sullivan's Response to that Motion is currently due on or before April 8, 2024. (ECF No. 77).

### IV.    Discussion

**A. Legal Standard: Rule 12(c)**

Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(c). A "party may move for judgment on the pleadings '[a]fter the pleadings are closed—but early enough not to delay trial.'" *Haney-Filippone v. Agora Cyber Charter Sch.*, 538 F. Supp. 3d 490, 493 (E.D. Pa. 2021) (quoting FED. R. CIV. P. 12(c)). A motion of this kind "is analyzed under the same standards that apply to a Rule 12(b)(6) motion[,]" with a court "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party[.]" *Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal quotation marks and citations omitted). A court "may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). Thus, "in deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents." *Id.* (internal quotation marks and citation omitted).

Because Rule 12(c) motions are analyzed under the same standards that apply to Rule 12(b)(6) motions, *id.*, the Court shifts its attention to the legal principles governing Rule 12(b)(6) motions.

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide "a short and plain statement of the claim showing that

the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[1] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (citation omitted).

Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. The Court Will Deny Mr. Conroy's Request for Partial Judgment on the Pleadings With Respect to Count II

As the Court previously noted, at Count II of her Amended Complaint, Ms. Sullivan brings a claim for Retaliation under the PHRA as against Mr. Conroy. *See supra* Section III.B.

---

[1] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach. *See id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

1. **Legal Standard**

Section 955(d) of the PHRA:

> [D]eclares it to be an "unlawful discriminatory practice" for a covered employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by [the PHRA], or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing" thereunder.

*Toth v. California Univ. of Pa.*, 844 F. Supp. 2d 611, 642 (W.D. Pa. 2012) (quoting 43 PA. STAT. § 955(d)). Therefore, to make out a prima facie case of Retaliation under Section 955(d) of the PHRA, a plaintiff must show that: "(1) [s]he engaged in activity protected by the statute; (2) the employer took an adverse employment action against [her]; and (3) there was a causal connection between the two." *Nelatury v. Pa. State Univ.*, 633 F. Supp. 3d 716, 735 (W.D. Pa. 2022) (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192–93 (3d Cir. 2015)); *see also Macknet v. Univ. of Pa.*, 738 F. App'x 52, 56 (3d Cir. 2018) ("Because the ADA [and] PHRA contain nearly identical anti-retaliation provisions that prohibit discrimination … based on protected activity, we have interpreted the anti-retaliation of [those statutes] as applying identically … [and as] being governed by the same set of precedents.") (cleaned up).

2. **The Parties' Arguments**

Mr. Conroy argues that judgment should be entered in his favor on Count II because Ms. Sullivan "alleges no facts that [he] knew of her protected activity and thus, the [Amended Complaint] contains no facts supporting causation." (ECF No. 35 at 4) (citing *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012) for the principle that an employer's "knowledge of an employee's protected conduct is an essential element of establishing a causal connection between an alleged protected activity and adverse employment action") (cleaned up). Indeed,

Mr. Conroy contends that Ms. Sullivan's only allegations regarding her personal interactions with him relate to her August 5, 2021, email. (*Id.* at 5). However, he states that Ms. Sullivan's "Amended Complaint is devoid of any factual allegations linking her August 5, 2021[,] opposition to the vaccine mandate to an alleged disability." (*Id.*). In like fashion, Mr. Conroy asserts that Ms. Sullivan has not pleaded any facts to support her argument that "[he] retaliated against her for requesting an accommodation" because the "Amended Complaint is similarly devoid of factual allegations that [he] had **any** knowledge of her accommodation request." (*Id.* at 6) (emphasis in original) (also arguing that Ms. Sullivan's "allegations are wholly insufficient to establish that Mr. Conroy took *any* action related to [her] employment.") (emphasis in original).

In her Response, Ms. Sullivan argues that she "alleged that [Mr.] Conroy made the decision to deny her and all [PMR's] accommodation requests[.]" (ECF No. 37 at 12).

In his Reply, Mr. Conroy contends that none of Ms. Sullivan's "allegations state that [he] knew that [she] herself had requested any kind of accommodation." (ECF No. 40 at 2).

3. Analysis

At the outset, the Court notes that the parties do not dispute the fact that Ms. Sullivan's request for an accommodation based on her alleged disability constitutes protected activity under the PHRA, thereby satisfying the first element of a Retaliation claim. (ECF Nos. 35, 37, 40); *see Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 153 (M.D. Pa. 2019) ("Under the ADA [and PHRA], employers are prohibited from retaliating against their employees for engaging in a protected activity such as requesting reasonable accommodation for their disability.").

Second, the Court notes that the parties do not dispute the fact that termination constitutes an adverse employment action for purposes of the PHRA, meaning that the adverse action component of Ms. Sullivan's claim is likewise satisfied. (ECF Nos. 35, 37, 40); *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 498 (E.D. Pa. 2018) ("For the reasons set forth above, [plaintiff] clearly presented a legally sufficient evidentiary basis for a reasonable jury to find that she suffered an adverse employment action by being terminated by [defendant].").[2]

With those findings in place, the Court shifts its attention squarely to the causation element of Ms. Sullivan's claim—namely, Mr. Conroy's argument that this element is not satisfied because he was unaware that Ms. Sullivan had requested an accommodation based on her alleged disability.

When the Court reads the Amended Complaint in the light most favorable to Ms. Sullivan, the Court holds that she has pleaded sufficient facts to plausibly show that Mr. Conroy knew that she had engaged in protected activity by requesting an accommodation to the vaccine requirement based on her alleged disability. The Court so finds for the following two interrelated reasons.

First, several allegations in the Amended Complaint indicate that Mr. Conroy played a highly significant role in implementing Exact Sciences' COVID-19 vaccine requirement, as well

---

[2] In reaching this finding, the Court stresses that it was Mr. Conroy who: (1) was the primary decisionmaker involved in creating Exact Sciences' vaccine requirement, (2) announced that employees would be *required* to be vaccinated by the deadline, (3) and denied Ms. Sullivan's accommodation request, leading to her termination. (ECF No. 22 at ¶¶ 16–18, 52–53). Therefore, reading the Amended Complaint in a light most favorable to Ms. Sullivan, it may be said that Mr. Conroy not only denied her exemption request, but also effectively decided to terminate her employment. As a corollary, because, as the Court further explains in text below, Mr. Conroy knew of Ms. Sullivan's accommodation request based on her alleged disability, the Court finds that Ms. Sullivan has plausibly pleaded that Mr. Conroy retaliated against her because of her protected activity.

as the accommodation process, making it very likely that he was aware of the nature of Ms. Sullivan's request. Indeed, Ms. Sullivan avers: (1) that it was Mr. Conroy who was the primary decisionmaker in creating Exact Sciences' COVID-19 vaccination policy, (ECF No. 22 at ¶ 18), (2) that it was Mr. Conroy who announced the company's COVID-19 vaccine requirement, (*id.* at ¶¶ 16–17), (3) that it was Mr. Conroy who announced the accommodation process, (*id.* at ¶ 17), (4) that Ms. Sullivan saw fit to email Mr. Conroy, in August 2021, with an email that Exact Sciences ultimately construed as being part of an accommodation request, (*id.* at ¶¶ 25–27), (5) that it was Mr. Conroy who moved the deadline for Exact Sciences employees to be fully vaccinated back to October 1, 2021, (*id.* at ¶ 39), (6) that it was Mr. Conroy who called Mr. Roth and generally mentioned to him other employees of Exact Sciences who were contemplating remaining unvaccinated, (*id.* at ¶¶ 40–42), and (7) that it was Mr. Conroy who was the "primary decisionmaker involved in deciding that no PMR, including Ms. Sullivan … would be provided exemptions" to the vaccination policy. (*Id.* at ¶ 53). When the Court reads these factual averments (several of which are quite specific) together and draws all inferences in favor of Ms. Sullivan, the Court finds it highly likely that Mr. Conroy, who was very much at the center of Ms. Sullivan's request for an accommodation, was aware that she had requested an accommodation based on her alleged disability.

Second, the Court reiterates Ms. Sullivan's allegations that "Exact Sciences and Mr. Conroy made the decision that exemptions would not be provided to PMRs such as [Ms. Sullivan], and that the accommodation requests would be denied at once[,]" and that Mr. Conroy was the "primary decisionmaker involved in deciding that no PMR, including Ms. Sullivan .. would be provided exemptions … which resulted in their employment being

terminated." (*Id.* at ¶¶ 52–53). Simply put, given Mr. Conroy's role in the COVID-19 vaccination requirement and accommodation process as a whole, as well as his role as CEO of Exact Sciences, the Court deems it reasonable to infer that he read the accommodation requests of his employees, including Ms. Sullivan, before deciding to deny them. *See, e.g., Shellenberger v. Summit Bancorp., Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) ("[The Site Manager] was present in [the] office when [plaintiff] was fired. As the Site Manager of the call center, her presence in [the] office during a meeting ... called to fire [plaintiff] presents circumstantial evidence that [she] *was* involved in the decision to terminate [plaintiff]."); *Nelatury*, 633 F. Supp. 3d 716 at 735 (analyzing a Retaliation claim and finding that "[i]t can be inferred that [defendant] knew about a[n EEOC] charge on which he was named as a respondent, and about an internal complaint that led to a ruling he had violated university policy.").

Therefore, the Court finds that Ms. Sullivan has plausibly pleaded that Mr. Conroy knew that she had requested an accommodation from the vaccine requirement based on her alleged disability.

Having resolved the issue of whether Mr. Conroy was personally aware of Ms. Sullivan's protected activity, the Court notes that Mr. Conroy does not further dispute the causal connection between Ms. Sullivan's request for an accommodation and her termination. (ECF Nos. 35, 40). Further, although the Court need not and does not resolve the issue at this time, it does note that, given Mr. Conroy's phone conversation with Mr. Roth in the weeks preceding Ms. Sullivan's termination, in which Mr. Conroy allegedly said that Mr. Roth's "little friends" were making a "selfish" decision in refusing the vaccine, Ms. Sullivan may have plausibly pleaded a causal connection between her accommodation request and her

termination. *Macknet*, 738 F. App'x at 56 ("A plaintiff may establish a causal connection based on an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, a pattern of antagonism coupled with timing, or evidence gleaned from the record as a whole.") (cleaned up); *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 548 (W.D. Pa. 2010) (finding that the approximately one month between the protected activity and the adverse employment action, coupled with additional evidence of "defendants' antagonistic behavior[,]" was sufficient to establish causation).

Accordingly, the Court holds that Ms. Sullivan has plausibly pleaded a Retaliation claim against Mr. Conroy at Count II.

### C. The Court Will Deny Mr. Conroy's Request for Partial Judgment on the Pleadings With Respect to Count V

As the Court previously noted, at Count V of her Amended Complaint, Ms. Sullivan brings a claim for Aiding and Abetting under the PHRA as against Mr. Conroy. *See supra* Section III.B.

#### 1. Legal Standard

A plaintiff can sustain "PHRA claims against a defendant in their individual capacity pursuant to Section 955(e) of the PHRA which forbids, 'any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice.'" *Brzozowski v. Pa. Turnpike Comm'n*, 165 F. Supp. 3d 251, 262–63 (E.D. Pa. 2016) (quoting 43 PA. STAT. § 955(e)). Thus, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of discrimination

or for his failure to take action to prevent further discrimination by an employee under supervision." *Id.* at 263 (internal quotation marks and citation omitted); *Nelatury*, 633 F. Supp. 3d at 734–35. However, courts have "emphasized that liability under § 955(e) only extends to those who are in a *supervisory* role as only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." *Brzozowski*, 165 F. Supp. 3d at 263 (internal quotation marks and citation omitted) (emphasis in original).

In *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), the United States Supreme Court:

> [H]eld "that an employee is a supervisor for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." "A tangible employment decision requires an official act of the enterprise, a company act." Specifically, a tangible employment action must "effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Coe v. Pa. State Univ.*, No. 4:14-CV-1818, 2016 WL 1162344, at *10 (M.D. Pa. Mar. 24, 2016) (quoting *Vance*, 570 U.S. at 424–31). Given the parallels between Title VII and the PHRA, several courts within this circuit have applied the Supreme Court's holding in *Vance* when determining whether an employee holds a supervisory role under the PHRA. *Id.* (collecting cases). This Court likewise finds that it is appropriate to apply *Vance* in this case in determining whether Mr. Conroy held a supervisory role relative to Ms. Sullivan. *Id.* at *10–11.

2. **The Parties' Arguments**

Mr. Conroy first argues that Ms. Sullivan has failed "to state a claim against [him] for aiding and abetting because [she] provides no description of supervisory acts by Mr. Conroy that would bring him within the scope of coverage as outlined" by the Third Circuit. (ECF No. 35 at 7). Further, even assuming that Ms. Sullivan has adequately pleaded that Mr. Conroy was

a supervisor, Mr. Conroy contends that the mere fact that he "made high-level policymaking decisions regarding the COVID-19 vaccine policy is simply insufficient to state a claim that [he] engaged in any discriminatory act or aided and abetted such acts against [Ms. Sullivan.]" (*Id.* at 8–9). In short, Mr. Conroy asserts:

> [Ms. Sullivan] has not pleaded any facts to support a conclusion that [he] acted on [her] accommodation request, made any decision specific to [her] employment, or even knew about her accommodation request. In sum, [Ms. Sullivan] has not pleaded any facts to support a claim that [Mr. Conroy] engaged in discrimination against [her].

(*Id.* at 10).

In her Response, Ms. Sullivan argues that she has pleaded sufficient facts to show that Mr. Conroy had supervisory authority over her. (ECF No. 37 at 11). Indeed, she avers that United States District Judge Susan Paradise Baxter rejected this same argument on behalf of Mr. Conroy in a case brought by Mr. Roth. (*Id.*).

In his Reply, Mr. Conroy again asserts that, if he was "unaware of [Ms. Sullivan's] accommodation request in the first place, he cannot have taken any retaliatory action related to that request." (ECF No. 40 at 3).

3. **Analysis**

Beginning with the issue of whether Mr. Conroy filled a supervisory role relative to Ms. Sullivan, the Court reiterates that Ms. Sullivan emailed Mr. Conroy in August 2021 about the vaccine requirement, and Exact Sciences deemed that email part of her accommodation request. (ECF No. 22 at ¶¶ 25–27). These facts indicate that Ms. Sullivan (and perhaps Exact Sciences) viewed Mr. Conroy as having authority over her relative to the vaccine requirement, a requirement that ultimately factored heavily into her termination. Further, Ms. Sullivan has

alleged that "Mr. Conroy was the primary decisionmaker involved in deciding that no PMR, including Ms. Sullivan ... would be provided exemptions to Exact Sciences' COVID-19 vaccination policy, which resulted in their employment being terminated." (*Id.* at ¶ 53). The Court finds that these allegations, coupled with those above, *see supra* Section IV.B, are sufficient to plausibly state that Mr. Conroy filled a supervisory role relative to Ms. Sullivan. *Vance*, 570 U.S. at 431 ("We hold that an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as ... firing ... or a decision causing a significant change in benefits.") (internal quotation marks and citation omitted); Dillan Roth v. Exact Sciences Corp. and Kevin Conroy, No. 1:22-CV-263-SPB (W.D. Pa. Apr. 7, 2023) (ECF No. 28 at 2–3) ("[P]aragraph 55 of the proposed amendment plainly alleges that [Mr.] Conroy was the primary decisionmaker involved in deciding that [Mr. Roth] was not entitled to an exemption from [Exact Sciences'] vaccination policy, which resulted in [Mr. Roth's] termination. Thus, contrary to [Exact Sciences'] assertion, [Mr.] Conroy's 'supervisory authority' has been adequately alleged.").

With that finding in place, the Court notes that a claim for aiding and abetting under the PHRA requires the existence of a "primary violation of the PHRA[.]" *Brzozowski*, 165 F. Supp. 3d at 263. However, with respect to Mr. Conroy's Motion for Partial Judgment on the Pleadings, he has not argued that Ms. Sullivan has failed to state a primary violation of the PHRA. (ECF Nos. 35, 40). Therefore, the Court assumes without deciding that Ms. Sullivan has stated such a violation. *Nelatury*, 633 F. Supp. 3d at 735 (noting that defendants' only attack on plaintiff's Retaliation claim under the PHRA was that one defendant did not know about the protected

activity and therefore only addressing that issue when ruling on the motion to dismiss the plaintiff's retaliation claims).[3]

Assuming without deciding that Ms. Sullivan can successfully advance a claim for disability discrimination under the PHRA as against Exact Sciences, the Court finds that she has sufficiently pleaded that Mr. Conroy aided and abetted that conduct. Indeed, as the Court explained earlier, Ms. Sullivan has pleaded facts that plausibly lead to the conclusion that Mr. Conroy knew that she had requested an accommodation from the vaccine requirement based on her alleged disability. *See supra* Section IV.B.3. Therefore, insofar as Ms. Sullivan can advance a disability discrimination claim against Exact Sciences, Mr. Conroy may plainly be said to have aided and abetted that discrimination by taking a critical step in completing it—denying her

---

[3] At Count V of her Amended Complaint, Ms. Sullivan alleges that Mr. Conroy "aided and abetted the discrimination set forth throughout this [Amended] Complaint." (ECF No. 22 at ¶ 108). At Count I, Ms. Sullivan avers that Exact Sciences discriminated against her under the ADA and the PHRA by failing to provide her with an accommodation, among other things. (*Id.* at ¶ 78).

To establish a prima facie case of disability discrimination under the ADA and the PHRA, a plaintiff must "show (1) that [s]he is disabled within the meaning of the ADA [or the PHRA], (2) that [s]he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [s]he was subjected to an adverse employment decision as a result of the discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *Gucker v. U.S. Steel Corp.*, 212 F. Supp. 3d 549, 559 (W.D. Pa. 2016) (finding that, even after amendments to the ADA, the "ADA and the PHRA remain coextensive" as to the second two elements).

While the Court does not definitively resolve this issue at this stage, the Court simply notes that Ms. Sullivan *may* have adequately pleaded a claim for disability discrimination under the PHRA. Indeed, she may have pleaded sufficient facts to support the findings that she was disabled, otherwise qualified for her job, and subjected to an adverse employment action as a result of the discrimination against her. *Doe(s) v. Pittsburgh Reg'l Transit*, No. 2:22-CV-1736, 2023 WL 4867850, at *6–7 (W.D. Pa. July 31, 2023) (finding that plaintiff's "anaphylaxis [was] a disability under the ADA"); (ECF No. 22 at ¶ 68) (alleging that, at the time of her termination, she had been fully performing her job duties). The Court stresses that it is not definitively resolving this issue at this time. Nor is the Court definitively resolving related issues, such as whether the ADA and PHRA's definitions of "disability" remain coextensive. *Gucker*, 212 F. Supp. 3d at 559.

accommodation request, which resulted in the termination of her employment. *See Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 705 (E.D. Pa. 2010).

Accordingly, the Court holds that Ms. Sullivan has plausibly stated a claim against Mr. Conroy under the PHRA for Aiding and Abetting.

## V.  Conclusion

For the foregoing reasons, the Court denies Mr. Conroy's Motion for Partial Judgment on the Pleadings. (ECF No. 34). The Court will certainly entertain renewed versions of Mr. Conroy's arguments when it rules on the pending Motion for Summary Judgment, (ECF No. 72), which will of course be predicated on the presence or absence of record evidence.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE SULLIVAN, | ) | CIVIL ACTION NO. 3:22-116 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| EXACT SCIENCES CORPORATION | ) | |
| and KEVIN CONROY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 29th day of March, 2024, upon consideration of Defendant Kevin Conroy's "Motion for Judgment on the Pleadings as to Counts II and V of Plaintiff's Amended Complaint[,]" (ECF No. 34), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion at ECF No. 34 is **DENIED**.

BY THE COURT:

_____
**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**